## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TIMOTHY SHAWN O'HARA, for himself
and on behalf of others similarly situated,
153 Interlaken Road
Stamford, CT 06903

      Plaintiff,

     v.

ORANGE COUNTY, NEW YORK,
225 Main Street,
Goshen, New York 10924

and

KERRY GALLAGHER,
Commission of Finance of the Orange
County Department of Finance
225 Main Street,
Goshen, New York 10924

and

STATE OF NEW YORK,
NYS State Capitol Building
Albany, NY 12224

     Defendants.

Case No.:

**COMPLAINT WITH JURY DEMAND**

## INTRODUCTION

The State of New York came up with an idea to make money. For nothing. It foreclosed

on delinquent taxes and other legitimate obligations, which it can do. But then New York used this

very frequent situation of foreclosures to enact a statute that 'allowed' it to keep ALL the money

from the foreclosure. Not just the amount owed, but everything. Even the homeowner's excess

equity. Admittedly, New York was not the only state that enacted this scheme. However, the U.S.

1

Constitution prohibits the government from taking property from a citizen in excess of what is owed without just compensation.

This protection *long* predates the federal constitution. "The principle that a government may not take more from a taxpayer than she owes can trace its origins at least as far back as Runnymeade in 1215, where King John swore in the Magna Carta that when his sheriff or bailiff came to collect any debts owed him from a dead man, they could remove property 'until the debt which is evident shall be fully paid to us; and the residue shall be left to the executors to fulfil the will of the deceased.' W. McKechnie, Magna Carta, A Commentary on the Great of King John, ch. 26, p.322 (rev. 2d ed. 1914) (footnote omitted)." *Tyler v. Hennepin County,* 598 U.S. 631, 639 (May 25, 2023).

This action is brought by the named Plaintiff, for himself and others similarly situated, to redress the constitutional violations practiced by Defendants in collecting from Plaintiff and the putative class more than they owed the government, in violation of the Takings Clause of the U.S. Constitution, and in violation of other state and federal rights, as set forth below.

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction over this action lies pursuant to 28 U.SC. §1331 based on the federal claims in this Complaint that arise under the Fifth Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution. Further, this action seeks relief under 42 U.S.C. §1983, for deprivation of rights guaranteed by the federal constitution accomplished under color of state law, over which original jurisdiction lies in this court pursuant to 42 U.S.C. §1343.

2.      This Court has supplemental jurisdiction over both legal and equitable claims in this Complaint arising under the laws of the state of New York law ("state law claims") pursuant

to 28 U.S.C § 1367 because the state law claims "arise out of a common nucleus of operative facts" with the federal claims over which this Court has original jurisdiction.

3.      This action is properly venued in this federal District pursuant to 28 U.S.C. §§1391(b)(1) and (2) because the Defendants are located here; a substantial portion of the conducts giving rise to this action occurred here; and the property that is the subject of this suit is located here.

## PARTIES

4.      Plaintiff O'Hara at all time relevant to this matter, was an owner of property located in Orange County, New York ("Plaintiff") and was the owner of certain real property that is the subject of this action.

5.      Defendant, State of New York, is a sovereign state of the United States sued in its official capacity.

6.      Defendant Orange County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Orange County is the Tax District described and discussed in this Complaint.

7.      Defendant Kerry Gallagher, is the current Commission of Finance of the Orange County Department of Finance, and is sued in her official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq. (Hereafter, the New York Real Property Tax Law is sometimes referred to as the RPTL).

## METHOD FOR TAKING PROPERTY WITHOUT JUST COMPENSATION PURSUANT TO NEW YORK LAW

8.      Plaintiff O'Hara was the owner of certain real property located in Orange County, New York, 17 Helms Hill Road, Washingtonville, New York, and known as LOC NO/APN/Parcel

#1: 332089 20-1-26.2 as well as the adjacent parcel known as LOC NO/APN/Parcel #2: 332089

20-1-26.3. (the "Property").

9.    Taxes were owed to the Defendant Tax District, Orange County, on the Property in

the amount of $69,328, including fees, interest and penalties. See, Exhibit A, attached and

incorporated herein[1].

10.    New York law, RPTL 902, places an automatic lien on the Property each year taxes

are levied. This lien attaches regardless of delinquency, automatically.

11.    Specifically, RPTL 902 provides:

The amount of all taxes, special ad valorem levies and special assessments levied upon any
parcel of real property by the board of supervisors shall, except as otherwise expressly
provided by law, be and become a lien thereon as of the first day of January of the fiscal
year for which levied and shall remain a lien until paid.

12.    Failure to pay the amounts owed results in a delinquent tax under RPTL 1102[2].

13.    "Delinquent tax" is defined by RPTL 1102[2] as "an unpaid tax, special ad valorem

levy, special assessment or other charge imposed upon real property by or on behalf of a municipal

corporation or special district, plus all applicable charges, relating to any parcel which is included

in the return of unpaid delinquent taxes prepared pursuant to section nine hundred thirty-six [936]

of this chapter or such other general, special, or local law as may be applicable."

14.    The aforementioned RPTL 936[2], as referenced in RPTL 1102[2], allows an

additional percentage to the delinquency amount:

In making the return of unpaid taxes, the collecting officer shall add five per centum [5%]
to the amount of each tax as levied. In the event that the collecting officer fails to do so,
the county treasurer shall make such addition. In a county in which there is a local law in
effect pursuant to section nine hundred twenty-eight-b [928(b)] or section nine hundred
seventy-two [972] of this chapter providing for the collection of taxes in installments, the
five per centum [5%] provided by this subdivision shall not be added to the taxes which a

---

[1] Per a May 30, 2023 email from Tiffany Finch, the Orange County Finance FOIL Officer, to Duncan V. Schroeder
of the Pacific Legal Foundation. Spreadsheet detailing this information available at https://homeequitytheft.org/new-
york (Last Visited December 8, 2023). See also Exhibit A.

real property owner has elected to pay in installments pursuant to section nine hundred twenty-eight-b [928(b)] or section nine hundred seventy-five [975] of this chapter. Such five per centum [5%] shall be added by the county treasurer to the amount of such taxes as shall have remained unpaid after the date upon which the last installment was due as provided in such local law. The amount of such added per centum shall thereafter be deemed part of the amount of the unpaid tax.

15.    Further, the applicable additional "charges" as referenced in the definition of "delinquent tax" are, pursuant to RPTL 1102:

(a) the cost of the mailing or service of notices required or authorized by this article; (b) the cost of publication of notices required or authorized by this title; (c) the amount of any interest and penalties imposed by law; (d) the cost of recording or filing legal documents required or authorized by this article; and (e) the reasonable and necessary cost of any search of the public record required or authorized to satisfy the notice requirements of this article, and the reasonable and necessary expenses for legal services of a tax district in connection with a proceeding to foreclose a tax lien; provided, that: (i) a charge of up to one hundred fifty dollars per parcel shall be deemed reasonable and necessary to cover the combined costs of such searches and legal expenses, and such an amount may be charged without substantiation, even if salaried employees of the tax district performed the search or legal services; and (ii) a tax district may charge a greater amount with respect to one or more parcels upon demonstration to the satisfaction of the court having jurisdiction that such greater amount was reasonable and necessary.

16.    If delinquent taxes (as described above, being the principal and allowed additional charges and percentages) remain unpaid for ten (10) months from the lien date, the enforcing officer is required to file a list of delinquent properties with the County Clerk, per RPTL 1122.

17.    Specifically, RPTL 1122 provides:

Ten months after lien date, or as soon thereafter as is practicable, but no sooner than one month after the receipt of the return of unpaid taxes, the enforcing officer of each tax district shall execute a list of all parcels of real property, except those excluded from such list in the manner provided by section eleven hundred thirty-eight [1138] of this article, affected by delinquent tax liens held and owned by such tax district.

18.    Thereafter, when 11 additional months elapse without proper payment (that is, a total of 21 months after the lien date), the enforcing officer is authorized to bring a foreclosure action on the property pursuant to RPTL 1123.

19.    Specifically, RPTL 1123 provides:

Twenty-one months after lien date, or as soon thereafter as is practicable, the enforcing officer shall execute a petition of foreclosure pertaining to those properties which remain subject to delinquent tax liens; provided, however, that in the case of property which is subject to a three or four year redemption period, such petition shall be executed thirty-three or forty-five months after lien date, respectively, or as soon thereafter as is practicable.

20.     If the owner of the property fails to answer the foreclosure petition or fails to redeem the property by paying all the delinquent taxes and charges and percentage by the expirations of the redemption period (governed by RPTL 1110), a judgment is entered pursuant to RPTL 1123 and 1136, authorizing the divestiture of title of the property from the owner, and authorizing the enforcing officer to file a deed taking full and complete title to the property from the owner and transferring it to the Tax District, here Defendant Orange County.

21.     Specifically, RPTL 1123 and 1136 provide:

Twenty-one months after lien date, or as soon thereafter as is practicable, the enforcing officer shall execute a petition of foreclosure pertaining to those properties which remain subject to delinquent tax liens; provided, however, that in the case of property which is subject to a three or four year redemption period, such petition shall be executed thirty-three or forty-five months after lien date, respectively, or as soon thereafter as is practicable. §1123(1).

All persons . . . who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption. §1136[3].

22.     Upon taking of title of the property from the owner, the Tax District may keep the property for government use, or is authorized by RPTL 1166 to sell the property.

23.     Specifically, RPTL 1166 provides:

Whenever any tax district shall become vested with the title to real property by virtue of a foreclosure proceeding brought pursuant to the provisions of this article, such tax district is hereby authorized to sell and convey the real property so acquired, which shall include any and all gas, oil or mineral rights associated with such real property, either with or without advertising for bids, notwithstanding the provisions of any general, special or local law.

6

## BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE
## NAMED PLAINTIFF'S PROPERTY WITHOUT JUST COMPENSATION

24.    On approximately May 13, 2021, pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Orange County, New York moved for an Order and Judgment of Foreclosure in Supreme Court, Orange County (Index No. 2018-10719) with respect to several parcels of real property, including Plaintiff O'Hara's Property, which the Court granted on or about July 26, 2021, and entered on or about July 30, 2021. See, Exhibit B, attached hereto and incorporated herein.

25.    Subsequent to the Court's grant and entry of the above order, on or about August 27, 2021, and pursuant to N.Y. Real Prop. Tax § 1102 et seq; §1132; and/or § 1194, inter alia, Karin Hablow, Commissioner of Finance of the Orange County Department of Finance (predecessor to Defendant Kerry Gallagher), and as "Enforcement Officer", conveyed and transferred title to the Property to the County of Orange, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. This Deed was recorded on September 1, 2021 as Instrument # 20210059262, Book No. 15041 at Page No. 1780 in the Orange County Recorder's Office. See, Exhibit C, attached hereto and incorporated herein.

26.    That act constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

27.    On approximately May 5, 2022, the County published that it would sell the Property at auction. See, Exhibit D, attached hereto and incorporated herein.

28.    On approximately June 14, 2022, and pursuant to Section 1166, the Property was sold pursuant to and under color of the laws of the State of New York for $172,000. See, Exhibit E, attached hereto and incorporated herein.

29.     The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff for delinquent taxes and charges.

30.     Pursuant to and under color of New York state law, that excess was not returned to Plaintiff, and Plaintiff was given no opportunity or ability to receive that excess.

31.     The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

**GOVERNMENTAL ACTIONS AND COLOR OF LAW**

32.     The collection in New York of property taxes and certain other obligations is governed by New York state law.

33.     Bodies politic, political subdivisions, and/or tax districts in New York receive their authority to make and levy taxes and other obligations, and to engage in collections of same and the disposition of the property taken in those collections and the proceeds derived therefrom, pursuant to the laws of the State of New York and do so under color of those laws.

34.     New York law allows tax districts to foreclose on and take title to real property based on unpaid taxes or other obligations. N.Y. Real Prop. Tax § 1102 et seq.

35.     This process provides that when real property taxes for an identified property have not been paid, the tax district's lien on the property is foreclosed. That action is recorded as a public record and can be verified by those records.

36.     As a result, the tax district takes title to the subject property from the owner and transfers it to itself.

37.     As stated above, this constitutes a taking of the subject property from the owner by the tax district.

38.     That taking is a violation of the Fifth Amendment to the United States Constitution, and Article I, Section 7 of the New York Constitution, if just compensation is not paid.

39.     However, subsequent to these takings conducted by Defendant Orange County, through its Enforcement Officer, Defendant Kerry Gallagher, and taken under the authority of the laws of the Defendant, State of New York, and under color of those laws, Plaintiff and the putative class members were not paid just compensation as required by the Fifth Amendment to the U.S. Constitution and the New York Constitution, Article I, Section 7.

40.     Specifically, through the statutory scheme describe above, the State of New York authorized not only the collection of taxes and other fees through the taking of the property, it authorized and perpetrated the taking of the equity in the property in excess of the amount owed by the property owner.

41.     This New York State statutory authorization was exercised by the State of New York's bodies politic, political subdivisions, and tax districts, including the Defendants in this action.

42.     Those powers were exercised in this case against the named Plaintiff and against the members of the putative class, all under color of those laws.

43.     The persons who undertake the ministerial steps to take and retain property, including the Property of the named Plaintiff, and the property of the putative class members, did so (and continue to do so today) solely and entirely through the 'authority' and under the color of the laws of the State of New York.

44.     As it relates to the named Plaintiff and members of the putative class, their property taken during the Class Period, defined below, had a value in excess of the amount owed to the government for the taxes and/or other obligations for which the property was taken.

45.     New York law, and the actions alleged herein taken under color of that law, afforded the named Plaintiff and the putative class member no opportunity to obtain that excess, and following sale (or retention of their property for government use) they did not receive that excess.

46.     The takings that are challenged by this action occurred in two distinct ways. Firstly, the citizen's property was taken under color of law for nonpayment of taxes or other obligations and sold, with proceeds in excess of the amount owed by the citizen, but, acting again under color of law, that excess was not returned to the citizen.

47.     Secondly, and alternatively, the property was taken under color of law for nonpayment of taxes or other obligations and was not sold but was kept by the government; the property value was in excess of the amount owed by the citizen, and, acting again under color of law, Defendants failed to return this excess to these citizens.

48.     The foregoing conduct and practice, accomplished solely under color of New York state law, of taking and keeping property or its proceeds, in excess of monies owed, is ongoing, and continues as current practice and is current 'law' in New York. This causes a persistent and continuing violation of both the United States and the New York constitutions, providing basis for declaratory and injunctive relief.

## VIOLATIONS OF THE UNITED STATES CONSTITUTION

49.     In *Tyler v. Hennepin County,* the United States Supreme Court, in a 9-0 decision, 1) declared unconstitutional state laws like New York's that authorize and result in the practice of taking and retaining excess proceeds of tax foreclosures and tax sales; and 2) declared a violation of a citizen's constitutional rights where such takings occur. *Tyler v. Hennepin County* (2023), 598 U.S. 631, 143 S.Ct. 1369.

50.     The reasoning of the *Tyler* decision is straightforward. The Constitution's Taking Clause prohibits the 'taking of property without just compensation.' U.S. Const., Amend 5. That prohibition applies to the federal government based on the Fifth Amendment, and state government through the Fourteenth Amendment. *Tyler* at 637-38.

51.     The prohibition is not against states enacting laws to collect taxes and other obligations, which is permitted to satisfy the citizen's taxes. It is against taking more than is owed, as is happening in this case. The government has the

> power to sell [plaintiff's] home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a "classic taking in which the government directly appropriates private property for its own use." *Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Regional Planning Agency*, 535 U. S. 302, 324 (2002) (internal quotation marks and alteration omitted). [Plaintiff] has stated a claim under the Takings Clause and is entitled to just compensation.

*Tyler* at 639.

## NEW YORK STATUTES WHICH CREATED AND RESULTED IN THIS TAKING VIOLATION

52.     The laws of the State of New York create the authority, and thereby the color of law, for retaining proceeds from foreclosed or seized property, in excess of the amount owed by the citizen.

53.     Specifically, New York Real Property Tax Law, Chapter 50-a, Article 11 ("Article 11") provides (in violation of both the New York and U.S. Constitution) that proceeds from the sale of foreclosed property may be kept, in excess of taxes owed.

54.     This violates the Takings Clause.

55.     Further, New York Real Property Tax Law § 1136[3], currently in force, provides for seizure of foreclosed property and thereupon grants title to the government in fee simple, so that "all persons . . . who may have had any right, title, interest, claim, lien or equity of redemption

in or upon such parcel, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption."

56.    This creates the constitutional violation here, because that the citizen's property is foreclosed in a way that the citizen loses all right to the property, including any property value in excess of the taxes owed by the individual to the taxing entity. *Hoge v. Chautauqua Cnty.*, 173 A.D.3d 1731, 104 N.Y.S.3d 813 (4th Dept. 2019).

57.    In addition to violating the Takings Clause of the United States Constitution, the conduct herein violates Article I, Section 7 of the New York Constitution, which identically states that, "[p]rivate property shall not be taken for public use without just compensation."

58.    The subject conduct in this action further violates both the United States and the New York constitutional ban against excessive fines. The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed." Article I, Section 5 of the New York Constitution provides: "Excessive bail shall not be required nor excessive fines imposed…"

## CLASS ACTION ALLEGATIONS

59.    This action is brought on behalf of the Plaintiff and the following class:

All owners of property in the state of New York: 1) where such property was seized or otherwise subject to foreclosure for unpaid taxes and associated obligations; 2) the property was either a) sold in foreclosure, or b) retained by any governmental entity; 3) the amount received in the sale, or the value of the property taken, was more than the taxes owed, that is, was in excess of the amount of the owner's debt for which the property was taken; and 4) the owner was not given the excess. The class excludes Plaintiff's counsel and officers of the court handling this matter. The class period is 6 years before the filing of this action, and thereafter.

60.    Plaintiff and the class reserve the right under Rule 23, F.R.C.P. to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

61.    This action has been brought and may be properly maintained as a class action under the provisions of Rule 23 of the Civil Rules because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

### A. **Numerosity**

62.    Members of the proposed class are so numerous that joinder of all members is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are hundreds of individuals in the Class.

### B. **Commonality**

63.    Common questions of law and fact exist as to all members of the proposed class. Such questions include, but are not limited to:

a.    Whether New York law's allowing retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the U.S. Constitution;

b.    Whether the practice against the named Plaintiff and the putative class of retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the U.S. Constitution;

c.    Whether the conduct alleged in this suit caused injury in fact to the Plaintiff and the putative class members;

d.    Whether Defendants, or any of them, should be restrained and thereafter enjoined from continuing to engage in the challenged practice;

e.    Whether New York law allowing retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the New York constitution;

13

f.      Whether the practice against the named Plaintiff and the putative class of retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the New York constitution;

g.      What relief should be granted, if any, to the named Plaintiff and the putative class;

h.      Whether Defendants or any of them were unjustly enriched by retaining an excess as a result of seizure of properties described in the Class definition;

i.      Whether the conduct alleged herein constitutes a taking of the property of Plaintiff and the putative class in violation of the Fifth Amendment of the United States Constitution;

j.      Whether the conduct alleged herein constitutes a taking of property of Plaintiff and the putative class in violation Article I, Section 7 of the New York Constitution;

k.      Whether the challenged provisions of New York law enumerated in this Complaint violate the U.S. Constitution, and should be declared as unconstitutional;

l.      Whether Defendants, or any of them, are liable for inverse condemnation of the property of the named Plaintiff and the putative class.

**C.  Typicality**

64.    The claims of the Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly harmed by the wrongful conduct alleged here.

**D.  Adequacy of Representation**

65.    Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiff are competent and experienced in class action and challenges to government taxes and fees litigation.

E. **Superiority**

66.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practical, and common questions of law and fact exist to all class members.

67.     Class action treatment will allow all similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties likely to be encountered in the management of this action that would preclude its maintenance as a class action.

F. **Rule 23 Further Requirements**

68.     Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for Defendants.

69.     Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

70.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final relief with respect to the class as a whole.

71.     Questions of law or fact common to the class members predominate over any questions affecting only individual members.

## COUNT I
### Violation of the Takings Clause of the
### Fifth Amendment of the United States Constitution

72.     Plaintiff realleges all averments as if fully rewritten herein.

73.     The conduct of Defendants Orange County and Gallagher as alleged herein, resulted in the taking of the property of Plaintiff and the putative class, under color of state law.

74.    By the conduct as alleged herein, Defendants Orange County and Gallagher took the property of Plaintiff and the putative class without just compensation.

75.    The property of Plaintiff and the putative class was taken both physically, and under color of law, depriving Plaintiff and the putative class their right, title, and interest to same.

76.    Defendant Gallagher took, and Defendant Orange County is now in the possession of the property of the Plaintiff and the putative class; or sold same and received the proceeds of such sale.

77.    The value of the property, or the proceeds from the sale thereof, exceeded the amount owed for the taxes or other charges for which the property was seized and taken.

78.    Defendants Orange County and Gallagher have not given to Plaintiff or to the putative class those excess monies and/or property, or its value.

79.    As a direct and proximate result of the foregoing, Plaintiff and the putative class have not received just compensation for the property seized and taken from them.

80.    Defendants have not provided Plaintiff or the class members adequate procedure to seek just compensation for the taking of their surplus proceeds.

81.    Plaintiff and the putative class members have been harmed and damaged by the foregoing, including but not limited to their loss of their surplus equity, for which they demand and are entitled to, just compensation relief under law and equity

## COUNT II
### Takings in violation of Article I, § 7, of the New York State Constitution

82.    Plaintiff realleges all averments as if fully rewritten herein.

83.    Defendants Orange County and Gallagher, acting as political subdivisions, bodies politic, and/or Tax Districts in the State of New York, or acting as an authorized agent and officer thereof, seized and took the property of Plaintiff and the putative class.

84.    Said seizure and taking was for unpaid taxes and/or other obligations.

85.    The foregoing actions were conducted pursuant to the authority of New York Real Property Tax Law, and/or similar local provision(s).

86.    The seizure and taking of the property of the Plaintiff and the putative class members was for a specific amount alleged to be owed by the property owner.

87.    Either the value of the property (if not sold at foreclosure after the taking), or the proceeds of the sale of the property (as to property sold following the taking), was in excess of the specified total amount (principal, costs and percentage) alleged to be owed by the property owner.

88.    Defendants Orange County and Gallagher did not return to the property owners, neither the Plaintiff nor the putative class members, that excess, in violation of Article I, Section 7 of the New York Constitution which requires just compensation for the taking of private property.

89.    As a direct and proximate result of the foregoing, Plaintiff and the putative class suffered injury, harm and damage, including at minimum the loss of their surplus equity, for which they demand, and are entitled to, just compensation and/or relief in law and equity.

## COUNT III
### Imposition of excessive fines in violation of the
### Eighth Amendment to the United States constitution

90.    Plaintiff realleges all averments as if fully rewritten herein.

91.    The seizure and taking of the property of the Plaintiff and the putative class was in response to the failure of Plaintiff and the putative class members to pay taxes or other obligation owed to the government.

92.    New York law, including the provisions cited above, were enacted, at least in part, to deter the non-payment of taxes owed the government.

93.    Defendants Orange County and Gallagher took their actions alleged herein in furtherance of that purpose.

94.    The amounts collected from Plaintiff and the putative class members, through the taking and keeping of the excess, had no correlation to the amount owed to the government.

95.    The seizure and taking alleged herein was conducted under color of state law, as averred above.

96.    The seizure and taking of the excess equity as alleged herein was a violation of the Eight Amendment to the United States Constitution's prohibition against excessive fines.

97.    As a direct and proximate result, Plaintiff and the putative class suffered injury, harm and damage, including at minimum the loss of the excess equity, for which they demand, and are entitled to, relief in law and equity.

### COUNT IV
**Imposition of excessive fines in violation of Article I §5 of the New York constitution**

98.    Plaintiff realleges all averments as if fully rewritten herein.

99.    The provisions of Article I, Section 5 of the New York State Constitution prohibit the imposition of excessive fines in the same manner and using the same analysis as the Eighth Amendment to the United States Constitution. See, *Grinberg v. Safir*, 181 Misc. 2d 444, 694 N.Y.S.2d 316, 326-27 (Ny. Sup. Ct. 1999).

100.    The conduct of Defendants Orange County and Gallagher were taken, as averred in paragraphs 92-96, above, for the same reasons and in the same manner as averred.

101.    This imposition and taking of all of the property of the Plaintiff and the putative class, and not limited to the amount actually owed, was an excessive fine in violation of Article I, Section 5 of the New York Constitution.

102.    As a direct and proximate result, Plaintiff and the putative class suffered injury, harm and damage, including at minimum the loss of the excess equity, for which they demand, and are entitled to, relief in law and equity.

**COUNT V**
**Declaratory Judgment that N.Y. Real Property Tax Law as Described Herein, inter alia, Violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution (Against Defendant State of New York and/or Defendants Orange and Gallagher)**

103.    Plaintiff realleges all averments as if fully rewritten herein.

104.    In material part, the Declaratory Judgments Act, 28 U.S.C. § 2201 (a), provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

105.    The parties currently have a disagreement and controversy, *inter alia*, whether: the conduct alleged herein is a taking for purposes of the United State Constitution, Fifth Amendment, and/or Article I, Section 7 of the New York Constitution; whether that taking was without just compensation; and, if so, whether Plaintiff and the putative class members have rights to relief.

106.    Plaintiff therefore requests this Court, pursuant to 28 U.S.C. § 2201 et seq., to declare and find that on its face, and/or as applied, N.Y. Real Prop. Tax Law as described herein, inter alia, violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

107.    Further, Plaintiff requests this Court, pursuant to 28 U.S.C. § 2201 et seq., to declare and find that on its face, and/or as applied, N.Y. Real Prop. Tax Law as described herein, inter alia, violates Article I, Section 7 of the New York Constitution and/or Article I, Section 5 of the New York Constitution.

## COUNT VI
## Unjust Enrichment

108.    Plaintiff realleges all averments as if fully rewritten herein.

109.    Defendants Orange and/or Gallagher have been enriched at Plaintiffs' and the putative class members' expense.

110.    Defendants Orange and Gallagher have received money or value to which they are not entitled.

111.    Defendants Orange and/or Gallagher were enriched when they either retained Plaintiff's Property and the properties of the putative class members, or sold said properties and collected and retained the surplus proceeds of that sale.

112.    Defendants Orange and Gallagher are not entitled to the surplus proceeds because Plaintiff and the putative class members are "entitled to the surplus in excess of the debt owed" to Defendants Orange and Gallagher. *Tyler*, 598 U.S. at 642.

113.    By taking the value of Plaintiff's and each putative class members' excess, Defendants Orange and Gallagher took more than was required to satisfy a tax debt, forcing Plaintiff and the putative class members to make a greater contribution to Defendants Orange and/or Gallagher than they owed.

114.    It is against equity and good conscience to permit Defendants Orange and Gallagher to retain these excess proceeds.

115.    For the foregoing reasons, Plaintiff and the putative class members are owed restitution in the amount of the excess proceeds collected by the Defendants Orange and Gallagher.

## COUNT VII
## Money Had and Received

116.    Plaintiff realleges all averments as if fully rewritten herein.

117.    Defendants Orange and Gallagher received money belonging to Plaintiff and each putative class member.

118.    Defendants Orange and/or Gallagher benefitted from receipt of said money.

119.    Under principles of equity and good conscience, Defendants Orange and Gallagher should not be permitted to keep the money.

120.    Defendants Orange and Gallagher received money belonging to Plaintiff and the putative class members when they collected the surplus proceeds to which Plaintiff and the putative class members were entitled. *See Tyler*, 598 U.S. at 642.

121.    By taking the value of Plaintiff's and each putative class members' excess, Defendants Orange and Gallagher took more than was required to satisfy a tax debt, forcing Plaintiff and the putative class members to make a greater contribution to Defendants Orange and/or Gallagher than they owed.

122.    Permitting Defendants Orange and/or Gallagher to retain the excess proceeds and/or the property itself would violate the principles of equity and good conscience.

123.    For the foregoing reasons, Defendants Orange and/or Gallagher owe Plaintiff and the putative class members restitution in the amount of the excess proceeds they collected and/or retained.

**COUNT VIII**
**Inverse Condemnation**

124.    Plaintiff realleges all averments as if fully rewritten herein.

125.    Defendants Orange and Gallagher have intruded onto Plaintiff's and each putative class member's property rights to such a degree that the conduct, as alleged herein, amounts to a compensable constitutional taking.

126.    Plaintiff and the putative class members have suffered damages in an amount to be proven at trial for the failure of Defendants Orange and/or Gallagher to provide just compensation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for himself and the putative class, as follows:

a)  A determination that this action may proceed as a class action pursuant to Federal Rules of Civil Procedure 23(b) with Plaintiff as class representative, and the undersigned as Class Counsel;

b)  For judgment for Plaintiff and the putative class, including but not limited to the amount of the excess (as referenced in this Complaint); interest thereon; costs; and attorney fees;

c)  For a declaration the New York Real Property Tax Law as described herein is unconstitutional, on its face and/or as applied;

d)  For a declaration that the practice challenged herein, of taking real property in excess of the amount of the taxes or other obligations for which the property was seized, and retaining such excess, is unconstitutional;

e)  For disgorgement, restitution, and/or equitable relief as Plaintiff and the putative class are entitled;

f)  For all other or further compensatory damages as Plaintiff and the putative class are entitled;

g)  For a preliminary and thereafter permanent injunction against Defendant New York, and Defendants Orange and Gallagher, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with

22

any of them, who receive notice of this Order, from future use or enforcement
the New York Real Property Tax Law as described herein, or of any practice
that takes, by seizure, foreclosure, process, mesne process or otherwise, private
property for payment of taxes or other obligation, in an amount in excess of the
amount for which the seizure was conducted, without returning that excess to
the owner from whom the property was taken;

h) For just compensation for inverse condemnation of the private property of
Plaintiff and the putative class;

i) For prejudgment and post-judgment interest, as permitted by law;

j) For a recovery of all costs, reasonable litigation expenses, and reasonable
attorneys' fees, as permitted by law, including but not limited to as provided by
42 U.S.C. § 1988 and New York law; and/or

k) For such other and further legal, declaratory, injunctive and equitable relief as
the Court may deem just and proper.

**Demand for Jury Trial**

Plaintiff and the putative class members demand trial by jury in the maximum number
allowed by law.

/s/ *Paul L. Leclair*
Paul L. Leclair, Esq.
Adams Leclair LLP
1200 Bausch & Lomb Place
Rochester, New York 14614
(585) 327-4100 // (585) 327-4200 Fax
Email: pleclair@adamsleclair.law

Patrick J. Perotti, Esq. (pro hac vice to be filed)
Nicole T. Fiorelli, Esq. (pro hac vice to be filed)
Frank A. Bartela, Esq. (pro hac vice to be filed)
Patrick J. Brickman, Esq. (pro hac vice to be filed)

Shmuel S. Kleinman, Esq. (pro hac vice to be filed)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 // (440) 352-3469 Fax
Email: pperotti@dworkenlaw.com
        nfiorelli@dworkenlaw.com
        fbartela@dworkenlaw.com
        pbrickman@dworkenlaw.com
        skleinman@dworkenlaw.com

Ronald P. Friedberg, Esq. (pro hac vice to be filed)
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Blvd., Suite 500
Cleveland, OH 44122
(216) 831-0042 // (216) 831-0542 Fax
Email: rfriedberg@meyersroman.com

| 1 | fips | Jurisdiction | apn | apn2 | Total due | Foreclosur | Foreclosur | Sale price | Sale date | Sale yea | Address | Delinquent taxpayer |
|---|------|--------------|-----|------|-----------|------------|------------|------------|-----------|----------|---------|---------------------|
| 836 | 36071 | ORANGE COUNTY | 332089 20-1-26.2 | 332089020000001026200000C | $69,328 | 5/5/2022 | | | | | 17 Helms Hill Rd & Helms Hill Rd | |
| 837 | 36071 | ORANGE COUNTY | 332089 20-1-26.3 | | | 5/5/2022 | | | | | | |

| 1 | fips | County | Jurisdiction | Data type - Total due | Source - Total due | Data type - Sales | Source - Sales | Note |
|---|------|--------|--------------|----------------------|--------------------|--------------------|----------------|------|
| 9 | 36071 | Orange County | County | Properties to be auctioned | Tiffany Finch (Orange County Finance FOIL Officer), email message to Duncan V. Schroeder, May 30, 2023. | | | |

**Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

-----------------------------------------------------------------X

In the Matter of the Foreclosure of Tax
Liens by Proceeding In Rem pursuant to
Article Eleven of the Real Property Tax
Law by the County of Orange

**DECISION**

Index No. 2018-10719

-----------------------------------------------------------------X

Pursuant to the provisions of Title 3, Article 11, of the Real Property Tax Law of the State of

New York, and upon the proof submitted, and due deliberation having been had thereon, the Court

hereby decides and finds as follows:

### FINDINGS OF FACT

1.      At all times hereinafter mentioned, Petitioner, the County of Orange, New York, was

and still is a municipal corporation duly incorporated under the laws of the State of New York.

2.      That the County of Orange, New York, at all times herein mentioned, was and still is

a tax district as that term is defined in Section 1102(6), within the provisions of Title 3, Article 11, of

the Real Property Tax Law ("RPTL") of the State of New York.

3.      On November 1, 2018, in compliance with RPTL Section 1122, the Department of

Finance for the County of Orange effected the filing with the Orange County Clerk of a List of

Delinquent Taxes for all parcels of real property affected by delinquent tax liens held and owned by

the County of Orange.  That annexed hereto and made a part hereof is this Court's Judgment, in

which attached thereto and made a part thereof is a revised List of Delinquent Taxes which sets forth

the respective parcels of land in alphabetical order of the Town tax map designation with the name

of the owner or owners of such parcel with the name of the last known owner of each parcel as the

same appears upon the tax roll as the same existed on the taxable status date, and if the parcel has

been transferred after the applicable taxable status date, then to such owner.  The properties which

**Exhibit B**

have been redeemed or for which Stipulations of Withdrawal have been entered into, have been omitted from the "List of Delinquent Taxes" filed on November 1, 2018 as is set forth in the revised List of Delinquent Taxes. The properties, the owners of which have answered or which are subject to Bankruptcy or other judicial stays, have also been omitted from the revised List of Delinquent Taxes. The properties removed from this List by reason of their being foreclosed in a prior proceeding and being now owned by the County of Orange or by reason of their being owned by other government agencies and not subject to foreclosure have also been omitted from such list. Judgment is not rendered against the properties removed from the attached revised List or against properties for which an Answer has been filed.

4.      That a duplicate of the original List was also duly filed in the Office of the Department of Finance and in the Office of the County Clerk. Notice of the filing of the List and the List were published in the Times Herald-Record on November 2, 2018, the Times Community Newspapers on November 7, 2018, the News of the Highlands and the Photo News/Warwick Advertiser on November 2, 2018, the Hudson Valley Press on November 7, 2018, the Orange County Post on November 2, 2018, and the Warwick Valley Dispatch on November 7, 2018.

5.      On October 24, 2019, the Department of Finance caused to be duly filed with the Orange County Clerk a Notice of Petition and Petition of Foreclosure duly executed by said department in conformance with RPTL Section 1123.

6.      On October 24, 2019, the Department of Finance presented a copy of the Notice of Foreclosure to be posted at the counter at the Department of Finance located at 255 Main Street, Goshen, New York, as well as at the bulletin board of the Orange County Clerk's Office located at 255 Main Street, Goshen, New York, and the bulletin board located in the public area of the Orange County Courthouse located at 285 Main Street, Goshen, New York.

7.      On October 24, 2019, and October 25, 2019, the Department of Finance caused to be mailed a true copy of the Notice of Foreclosure, Petition of Foreclosure and a tax bill, indicating the affected property being foreclosed upon, as well as the relevant page from the list filed on November 1, 2018.  These documents were mailed by ordinary first class mail and by certified mail, return receipt requested to: (a) each owner and any other person whose right, title, interest or lien was a matter of public record as of the date the List of Delinquent Taxes was filed, which right, title, interest or lien, would be affected by the termination of the redemption period and whose name and address are reasonably ascertainable from the public records, including the records in the office of the Surrogate of the County of Orange; and (b) any other person who filed a declaration of interest, pursuant to RPTL Section 1126 which had not expired.

8.      Thereafter, the Department of Finance duly caused to be published a Notice of Foreclosure, in the prescribed form, in at least three newspapers so designated for such publication, to wit:

A.      The Times Herald-Record on November 8, 2019, November 22, 2019, and December 6, 2019.

B.      The Times Community Newspapers on November 6, 2019, November 20, 2019, and December 4, 2019.

C.      News of the Highlands on November 8, 2019, November 22, 2019, and December 6, 2019.

D.      The Photo News/Warwick Advertiser on November 8, 2019, November 22, 2019, and December 6, 2019.

E.      Hudson Valley Press on November 6, 2019, November 20, 2019, and December 4, 2019.

F.      The Orange County Post on November 8, 2019, November 22, 2019, and December 6, 2019.

G.    The Warwick Valley Dispatch on November 6, 2019, November 20, 2019, and December 4, 2019.

The Times Herald-Record has a general circulation in the County of Orange. The Times Community Newspapers, the Photo News/Warwick Advertiser, the Orange County Post, the News of the Highlands, the Hudson Valley Press, and the Warwick Valley Dispatch were the County Official newspapers designated by the Orange County Legislature in 2019, pursuant to Resolution No. 3 of 2019.

9.    After the mailings of October 24, 2019, the Department of Finance discovered that there were errors in the mailings sent to recipients in the Towns of Monroe, Mount Hope, Newburgh, New Windsor, Tuxedo, Wallkill, Warwick, Wawayanda, and Woodbury. The original Notice of Petition and Petition were drafted as consistent with State law. However, the mailings to the recipients in such Towns also contained letters which set forth an inaccurate amount due and owing.

10.    Accordingly, the Department of Finance corrected the letters sent to all recipients in the Towns set forth above. The Department of Finance then put the corrected letters in the appropriate envelopes, and prepared mailings of the corrected letters by certified and ordinary first class mail to all recipients in such Towns.

11.    In compliance with Real Property Tax Law section 1125, the County mailed by certified and first class mail the notice to alternative addresses provided upon request by the relevant Postmaster.

12.    No person having any right, title, interest or lien upon any parcels described in such revised List of Delinquent Taxes has filed a duly Verified Answer, setting forth any defense or objection to the foreclosure or any other Answer except the parcels listed in **Exhibit "P"** of the application for Judgment, which have been severed from this main action by the County of Orange

in accordance with RPTL Section 1123(7).

13.    Those parcels which have been redeemed from the "List of Delinquent Taxes" or for which Stipulations to remove have been agreed to, have been removed from the revised List of Delinquent Taxes and the Department of Finance has filed Certificates of Redemption and/or Stipulations of Removal.

14.    The parcels which were listed on the List of Delinquent Taxes which are either subject to a Stay under the Bankruptcy Laws, or are subject to another Stay as a matter of law or are owned by a governmental agency, and are not subject to foreclosure and have been removed from the revised List of Delinquent Taxes.  Therefore, judgment shall not be rendered against such properties at this time.

15.    All Affidavits of filing, publication, posting, mailing or other acts required by Title 3, Article 11, of the Real Property Tax Law of the State of New York have been duly filed.

### CONCLUSIONS OF LAW

16.    All of the proceedings in this action were regular and complied with Article 11, Title 3, of the Real Property Tax Law of the State of New York, and there has been due and full compliance by the County of Orange, New York with the provisions of said title.

17.    The County of Orange is entitled to full judgment awarding to it title and possession of the parcels described in said Revised List of Delinquent Taxes. This List excepts those parcels which have been redeemed, stayed, or which were the subject of prior foreclosure proceedings or which are owned by governmental agencies, on which Answers have been served or for which Stipulations of Discontinuance have been agreed to. The County of Orange is entitled to a direction in said Judgment that its Commissioner convey to said County of Orange, by proper deed, full and complete title in fee simple absolute as provided by RPTL Section 1136.

**I, THEREFORE**, direct Judgment to be entered for the County of Orange, State of New York, in accordance with these Findings of Fact and Conclusions of Law.

Dated: _____, 2021
Goshen, New York

ENTER

_____
**HONORABLE ROBERT A. ONOFRY**
**Supreme Court Justice**

# Exhibit A

| TOWN | SWIS | SBL | OWNER & ADDRESS | | | | |
|---|---|---|---|---|---|---|---|
| Blooming Grove | 332001 | 104-2-19 | West Leo Jr | West Mary | 43 Decker Dr | Washingtonville, NY | 10992 |
| Blooming Grove | 332001 | 120-6-1 | Benn Richard W | 1 Mockingbird Ln | Washingtonville, NY | | 10992 |
| Blooming Grove | 332003 | 217-1-2 | Congregation Arye Shuag | 55 Mangin Rd | Monroe, NY | | 10950 |
| Blooming Grove | 332089 | 20-1-26.2 | O'Hara Timothy Shawn | 17 Helms Hill Rd | Washingtonville, NY | | 10992 |
| Blooming Grove | 332089 | 20-1-26.3 | O'Hara Timothy Shawn | 17 Helms Hill Rd | Washingtonville, NY | | 10992 |
| Blooming Grove | 332089 | 22-10-17 | Mann Emil Est of | c/o Charlene DeFreese | 7 Revere Rd | Monroe, NY | 10950 |
| Blooming Grove | 332089 | 24-2-34 | Khanyak Olga S | 30 Cedar Trl | Monroe, NY | | 10950 |
| Blooming Grove | 332089 | 27-1-19 | Giuttari Maria S | 8 Wildwood Trl | Monroe, NY | | 10950 |
| Blooming Grove | 332089 | 27-1-33 | Giuttari Maria | Giuttari Biagio | 8 Wildwood Trl | Monroe, NY | 10950 |
| Blooming Grove | 332089 | 27-1-34.1 | Giuttari Maria | Giuttari Biagio | 8 Wildwood Trl | Monroe, NY | 10950 |
| Blooming Grove | 332089 | 27-1-34.2 | Giuttari Maria | Giuttari Biagio | 8 Wildwood Trl | Monroe, NY | 10950 |
| Blooming Grove | 332089 | 27-1-44 | Giuttari Maria | Giuttari Biagio | 8 Wildwood Trl | Monroe, NY | 10950 |
| Blooming Grove | 332089 | 27-1-46 | Pelio David est of | 3 Pleasant View Rd | Monroe, NY | | 10950 |
| Blooming Grove | 332089 | 28-10-3.1 | Weed Jonathan | 39 sunset Trl | Monroe, NY | | 10950 |
| Blooming Grove | 332089 | 28-3-10 | Celise Joseph & Janet | 243 W. Main St | Bergenfield, NJ | | 07621 |
| Blooming Grove | 332089 | 29-2-79 | Lema Luis | 14 Broad St | Brockton, MA | | 02301 |
| Blooming Grove | 332089 | 30-4-7 | Lynch Gary | 49 Arcadian Trl | Monroe, NY | | 10950 |
| Blooming Grove | 332089 | 31-6-29 | John Della | 1454 E 94th St | Brooklyn, NY | | 11236 |
| Blooming Grove | 332089 | 33-2-14 | Sorensen Janet | 23 Artzonia Ave | Long Beach, NY | | 11561 |
| Blooming Grove | 332089 | 34-1-35 | Lema Luis | 14 Broad St | Brockton, MA | | 02301 |
| Blooming Grove | 332089 | 34-2-18 | Grimes Dermot | 24 Oakwood Trl S | Monroe, NY | | 10950 |
| Blooming Grove | 332089 | 44-1-109 | Formisano Vincent | Formisano Brenda A | 69 Bull Mine Rd | PO Box 502 | Chester, NY | 10918 |
| Blooming Grove | 332089 | 55-1-76 | Gribbin Maryann T | 69 Barr Ln | Monroe, NY | | 10950 |



**ORANGE COUNTY – STATE OF NEW YORK**
**ANN G. RABBITT, COUNTY CLERK**
**255 MAIN STREET**
**GOSHEN, NEW YORK 10924**

**COUNTY CLERK'S RECORDING PAGE**
**\*\*\*THIS PAGE IS PART OF THE DOCUMENT -- DO NOT DETACH\*\*\***

```
Recording:

Recording Fee                        0.00
Cultural Ed                          0.00
Records Management - Coun            0.00
Records Management - Stat            0.00
TP584                                0.00
RP5217 All others - State            0.00
RP5217 - County                      0.00
                                 _____
Sub Total:                           0.00

Transfer Tax
Transfer Tax - State                 0.00
                                 _____
Sub Total:                           0.00
                                 _____
Total:                               0.00
**** NOTICE: THIS IS NOT A BILL ****

***** Transfer Tax *****
Transfer Tax #: 1002
Commercial Transfer Tax
Consideration: 0.00

Total:                               0.00
```

```
BOOK/PAGE:  15041 / 1780
INSTRUMENT #:  20210059262

Receipt#: 2937492
Clerk:    PM
Rec Date: 09/01/2021 11:48:27 AM
Doc Grp:  D
Descrip:  DEED
Num Pgs:  55
Rec'd Frm: CASH

Party1:   ORANGE COUNTY COMM OF FINANCE
Party2:   ORANGE COUNTY
Town:     BLOOMING GROVE-WASHINGTONVILLE
          104-2-19
```

Payment Type:     Check  ___
                  Cash   ___
                  Charge ___
                  No Fee ___

Comment: _____

Ann G. Rabbitt
Orange County Clerk

```
Record and Return To:


ORANGE COUNTY
255 MAIN STREET
GOSHEN NY 10924
```

**Exhibit C**

# DEED

**THIS INDENTURE,** made the 27th day of August 2021 between **KARIN E. HABLOW, Commissioner of Finance of the Orange County Department of Finance, 255 Main Street, Goshen, NY,** and Enforcement Officer of the County of Orange party of the first part.

**COUNTY OF ORANGE,** a municipal corporation with offices at 255 Main Street, Goshen, County of Orange, State of New York, party of the second part

## WITNESSETH

**THAT, WHEREAS,** The County of Orange commenced a proceeding in Supreme Court, Orange County, (Index Number 2018-10719) to foreclose certain tax liens on properties located in the County of Orange, pursuant to Article 11 of the Real Property Tax Law of the State of New York and the final Judgment and the Order and Judgment by Stipulation, having been signed by the Honorable Robert A. Onofry, Supreme Court Justice on July 26, 2021 and August 23, 2021 respectively and the Enforcement Officer having been granted by said Judgments the power to execute a deed to the County of Orange concerning the properties which were the subject of said action, except those which were excepted by said Judgments

**NOW, THEREFORE,** pursuant to the terms of said Judgment, the Enforcement Officer hereby conveys and transfers to the County of Orange, full and complete title, in fee simple absolute, to the following described premises, together with the building and improvements as the same are described in the records of the County Clerk

| **TOWN** | **PROPERTY ADDRESS** | **OWNER** | **TAX MAP NO. SEC. BLOCK LOT** |
|---|---|---|---|

**VARIOUS – SEE ATTACHED LIST**

IN PRESENCE OF:                                COUNTY OF ORANGE

Gina Hornek
255 Main Street
Goshen, NY 10924                              KARIN E. HABLOW

                                             **COMMISSIONER OF FINANCE**

STATE OF NEW YORK:
           SS:
COUNTY OF ORANGE:

On the 27th day of August in the year 2021 before me, the undersigned, a Notary Public in and for said State, personally appeared, Karin E. Hablow, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual , or the person upon behalf of which the individual acted, executed the instrument.

SARA M. HUMPHREY
Notary Public, State of New York
No. 04HU6334344
Qualified in Orange County
Commission Expires Dec. 14, 2023                    NOTARY PUBLIC

| TOWN | VILLAGE | SWIS | SBL | OWNER | ADDRESS | | | | LOCATION | CODE | CLASS | FRT | DEP | ACRES | SCHOOL | ASSMNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Blooming Grove | Washingtonville | 332001 | 104-2-19 | West Leo Jr | West Mary | 43 Decker Dr | Washingtonville, NY | | 10992 | 43 Decker Dr | 210 | 1 Family Res | 110.00 | 110.00 | 0.00 | Washingtonville CSD | 48,800.00 |
| Blooming Grove | Washingtonville | 332001 | 120-5-1 | Benn Richard W | 1 Mockingbird Ln | Washingtonville, NY | | | 10992 | 1 Mocking Bird Ln | 210 | 1 Family Res | 0.00 | 0.00 | 1.50 | Washingtonville CSD | 38,200.00 |
| Blooming Grove | South Blooming Gro | 332003 | 217-1-2 | Congregation Arye : | 55 Mangin Rd | Monroe, NY | | | 10950 | 55 Mangin Rd | 620 | Religious | 0.00 | 0.00 | 5.00 | Washingtonville CSD | 154,700.00 |
| Blooming Grove | | 332089 | 20-1-26.2 | O'Hara Timothy Sh: | 17 Helms Hill Rd | Washingtonville, NY | | | 10992 | 17 Helms Hill Rd | 311 | Res vac land | 0.00 | 0.00 | 1.20 | Washingtonville CSD | 14,500.00 |
| Blooming Grove | | 332089 | 20-1-26.3 | O'Hara Timothy Sh: | 17 Helms Hill Rd | Washingtonville, NY | | | 10992 | Helms Hill Rd | 312 | Vac w/imprv | 0.00 | 0.00 | 1.20 | Washingtonville CSD | 8,300.00 |
| Blooming Grove | | 332089 | 22-10-17 | Mann Emil Est of | c/o Charlene DeFre | 7 Revere Rd | Monroe, NY | | 10950 | Revere Rd & Poplar Trl | 311 | Res vac land | 15.00 | 100.00 | 0.00 | Washingtonville CSD | 500.00 |
| Blooming Grove | | 332089 | 24-2-34 | Khanyak Olga S | 30 Cedar Trl | Monroe, NY | | | 10950 | 30 Cedar Trl | 210 | 1 Family Res | 160.00 | 100.00 | 0.00 | Washingtonville CSD | 20,700.00 |
| Blooming Grove | | 332089 | 27-1-19 | Giuttari Maria S | 8 Wildwood Trl | Monroe, NY | | | 10950 | 7 Wildwood Trl | 311 | Res vac land | 65.00 | 100.00 | 0.00 | Washingtonville CSD | 5,900.00 |
| Blooming Grove | | 332089 | 27-1-33 | Giuttari Maria | Giuttari Biagio | 8 Wildwood Trl | Monroe, NY | | 10950 | 8 Wildwood Trl | 210 | 1 Family Res | 73.00 | 100.00 | 0.00 | Washingtonville CSD | 21,500.00 |
| Blooming Grove | | 332089 | 27-1-34.1 | Giuttari Maria | Giuttari Biagio | 8 Wildwood Trl | Monroe, NY | | 10950 | Edgewood Trl | 311 | Res vac land | 72.00 | 100.00 | 0.00 | Washingtonville CSD | 1,200.00 |
| Blooming Grove | | 332089 | 27-1-34.2 | Giuttari Maria | Giuttari Biagio | 8 Wildwood Trl | Monroe, NY | | 10950 | Whippoorwill Trl | 311 | Res vac land | 70.00 | 100.00 | 0.00 | Washingtonville CSD | 1,100.00 |
| Blooming Grove | | 332089 | 27-1-44 | Giuttari Maria | Giuttari Biagio | 8 Wildwood Trl | Monroe, NY | | 10950 | Whippoorwill Trl | 311 | Res vac land | 48.00 | 100.00 | 0.00 | Washingtonville CSD | 800.00 |
| Blooming Grove | | 332089 | 27-1-46 | Pelio David est of | 3 Pleasant View Rd | Monroe, NY | | | 10950 | Pleasant View Rd | 311 | Res vac land | 21.00 | 100.00 | 0.00 | Washingtonville CSD | 1,000.00 |
| Blooming Grove | | 332089 | 28-10-3.1 | Weed Jonathan | 39 sunset Trl | Monroe, NY | | | 10950 | 39 Sunset Trl | 260 | Seasonal res | 90.40 | 183.00 | 0.00 | Washingtonville CSD | 4,500.00 |
| Blooming Grove | | 332089 | 28-3-10 | Calise Joseph & Ja | 243 W. Main St | Bergenfield, NJ | | | 07621 | 87 Sylvan Trl | 210 | 1 Family Res | 50.00 | 100.00 | 0.00 | Washingtonville CSD | 15,500.00 |
| Blooming Grove | | 332089 | 29-2-79 | Lema Luis | 14 Broad St | Brockton, MA | | | 02301 | 72 Sylvan Trl | 260 | Seasonal res | 100.00 | 100.00 | 0.00 | Washingtonville CSD | 9,400.00 |
| Blooming Grove | | 332089 | 30-4-7 | Lynch Gary | 49 Arcadian Trl | Monroe, NY | | | 10950 | 49 Arcadian Trl | 210 | 1 Family Res | 50.00 | 100.00 | 0.00 | Washingtonville CSD | 11,600.00 |
| Blooming Grove | | 332089 | 31-6-29 | John Della | 1454 E 94th St | Brooklyn, NY | | | 11236 | Summit Trl Prop | 311 | Res vac land | 4.00 | 100.00 | 0.01 | Washingtonville CSD | 100.00 |
| Blooming Grove | | 332089 | 33-2-14 | Sorensen Janet | 23 Arizonia Ave | Long Beach, NY | | | 11561 | 17 Arbor Trl | 260 | Seasonal res | 50.00 | 100.00 | 0.00 | Washingtonville CSD | 7,300.00 |
| Blooming Grove | | 332089 | 34-1-35 | Lema Luis | 14 Broad St | Brockton, MA | | | 02301 | 10 Utopian Trl | 210 | 1 Family Res | 50.00 | 100.00 | 0.00 | Washingtonville CSD | 7,700.00 |
| Blooming Grove | | 332089 | 34-2-18 | Grimes Dermot | 24 Oakwood Trl S | Monroe, NY | | | 10950 | 398 Mountain Lodge Rd | 210 | 1 Family Res | 111.00 | 95.00 | 0.00 | Washingtonville CSD | 27,000.00 |
| Blooming Grove | | 332089 | 44-1-109 | Formisano Vincent | Formisano Brenda : | 69 Bull Mine Rd | PO Box 502 | Chester, NY | 10918 | Bull Mine Rd | 311 | Res vac land | 0.00 | 0.00 | 9.80 | Monroe Woodbury CSD | 4,900.00 |
| Blooming Grove | | 332089 | 55-1-76 | Gribbin Maryann T | 69 Barr Ln | Monroe, NY | | | 10950 | 5 Heidi Ln | 311 | Res vac land | 0.00 | 0.00 | 3.40 | Monroe Woodbury CSD | 19,000.00 |

## NOTICE OF PUBLIC SALE OF CERTAIN ORANGE COUNTY LANDS
## ACQUIRED BY REASON OF A DEFAULT IN PAYMENT OF TAXES
## AND A FAILURE TO REDEEM

**PLEASE TAKE NOTICE,** that the Orange County Commissioner of Finance will conduct a public sale of certain lands now owned by Orange County because of a failure to redeem such lands from the County's relevant List of Delinquent Taxes, all pursuant to the provision of Local Law No. 2 of 2010. On Thursday, May 5, 2022, the County will conduct a deed sale auction at 11:00 AM.

**Any bidder is advised to investigate <u>thoroughly</u> the terms and conditions of the auction included in the auction catalog.**
**The catalog may be picked up at the Department of Real Property, 255 Main St., Goshen NY 10924.**
**The catalog will also be available on the Orange County web-site, orangecountygov.com/real property, Deed Sale.**
**The terms and conditions, which are in the catalog, may also be viewed separately on the Orange County web-site, orangecountygov.com/realproperty, Deed Sale.**

The said sales will be held on-line. The Orange County Commissioner of Finance reserves the right to offer for bid such lands as described by tax map designation, section, block and lot.

Any bidder is advised to investigate the nature and condition of these lands in advance of this sale, by verification with the local assessor's office or as he may otherwise choose, as Orange County makes no representation as to the nature, location or condition of these lands. Bidders are further advised to investigate as to whether any liens are attached to said lands, as certain liens may remain attached after public sale.

After recording by Orange County, successful bidders will receive quitclaim deeds describing the property by tax map section, block and lot number without representation or covenants or warranty and will convey whatever title Orange County has acquired to said lands by reason of the failure to redeem. Successful bidders will pay by bank check to Orange County Commissioner of Finance the deposit, buyer's premium and the amount necessary to cover the recording costs of each parcel purchased.

Except as aforesaid, the Commissioner of Finance reserves the right to reject any bid for any reason whatsoever, insofar as permitted by law.

Title delivered by reason of such sale will be free from all county, town, school and village taxes up to the date of the sale, **EXCEPT:**

2023 County/Town Taxes, which may include Relevies of 2022-2023 Village and/or School Taxes
2022-2023 Village Taxes
2022-2023 School Taxes
2022-2023 City School Tax

**ORANGE COUNTY IS NOT RESPONSIBLE FOR ANY ERRORS CONTAINED IN THIS NOTICE.**

DATED: February 25, 2022   GOSHEN, NEW YORK

KARIN E. HABLOW,
COMMISSIONER OF FINANCE

---

**For further information please call Real Property Tax Service (845) 291-2490**
**Eric Ruscher**
**Director**

---

**Exhibit D**



Absolute Auctions & Realty, Inc.
P.O. Box 1739 / 45 South Avenue
Pleasant Valley, NY 12569
845 635 3169

Orange County Online Only Tax Foreclosure Real Estate Auction

## CONTRACT OF SALE
### and
### RECEIPT OF DEPOSIT



Purchaser: Nicholas Berardi
Address: 98 Mountain Lodge Rd
City: Washingtonville, NY 10992
Phone: 315-930-5017

Bidder Number: 5503
Fed ID Number:

Date: 5/6/2022

I hereby agree to purchase the property known as Auction Property No: 3 located in the **Town of Blooming Grove**, Tax Map No: **20-1-26.2, 20-1-26.3** and agree to pay the bid price of $172,000.00 plus the 11.00% Buyer's Premium of $18,920.00 together with closing costs, school tax, and village tax, if applicable, for the said property on the terms contained in the TERMS AND CONDITIONS OF THE SALE, signed by and agreed to by me and made part of this contract.

It is understood and agreed that the conveyance will be by QUICK CLAIM DEED to be executed subsequent to receipt of all money due in accordance with the TERMS AND CONDITIONS OF SALE.

I have deposited with County of Orange the sum of $38,185.00 as a down payment, to apply to the purchase price. Said down payment shall be returned to the PURCHASER forthwith upon notice by County of Orange that this offer is not accepted. The deposit shall be forfeited as liquidated damages if the PURCHASER fails to comply with the TERMS AND CONDITIONS OF THE SALE as indicated therein.

Buyer: *Nicholas Berardi*

SS #

Buyer:

SS #

Buyer:

SS #

| Date | Amount | Type |
|------|--------|------|
| 5/5/22 | $13,184.00 | Credit Card |
| 5/5/22 | $25,001.00 | Credit Card |

Receipt of $38,185.00 deposit is hereby acknowledged.

By _____
*County of Orange*

..................................................................................................

THE FOLLOWING IS FOR OFFICIAL USE ONLY--DO NOT COMPLETE

Seller:

The Foregoing offer is:

1. Accepted on _____

2. Rejected on _____

County of Orange
255 Main Street
Goshen, NY 10924
PHONE: 845-291-2480
By: _____

Karin Hablow, Orange County Commissioner of Finance

Recap:

| | |
|---|---|
| Bid Price: | $172,000.00 |
| Buyers Premium: | $18,920.00 |
| Surcharge, Warwick CPF Fee: | |
| 1.5% Advertising Fee based on bid amount: | $0.00 |
| School/Village Tax: | |
| Town/County Tax: | |
| NYS Transfer Tax: | |
| Filing Fee – TP-5217 & County Clerk Fee: | $305.00 |
| SUB TOTAL: | $191,225.00 |
| Less Down Payment: | $38,185.00 |
| Balance Due in cash or bank check: | $153,040.00 |

Payable to Orange County Commissioner of Finance by June 3, 2022. Time is of the essence.

(SH) 6/3/22 BC# 116925

Exhibit E