## UNITES STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ALEXASANDR MKRTCHYAN, for himself
and on behalf of others similarly situated,
100 Applewood Lane
Naugatuck, CT 06770

and

RODNEY R. FERGUS, for himself and on
behalf of others similarly situated
c/o Adams Leclair LLP
1200 Bausch and Lomb Place
Rochester, NY 14604

Plaintiffs,

  v.

ORANGE COUNTY, NEW YORK,
225 Main Street,
Goshen, New York 10924

and

KERRY GALLAGHER,
Commissioner of Finance of the County of
Orange, New York
225 Main Street,
Goshen, New York 10924

and

DUTCHESS COUNTY, NEW YORK
22 Market St.
Poughkeepsie, NY 12601

and

HEIDI SEELBACH,
Commissioner of Finance of the County of
Dutchess, New York
Finance Department
22 Market St., 4th Fl.
Poughkeepsie, NY 12601

  Defendants.

Case No.:7:23-cv-10770-KMK

**SECOND AMENDED COMPLAINT
WITH JURY DEMAND**

1

**INTRODUCTION**

The State of New York came up with an idea to make money. For nothing. It allowed counties to foreclose on delinquent taxes and other legitimate obligations, which they can do. But then New York used this very frequent situation of foreclosures to enact a statute that 'allowed' counties to keep ALL the money from the foreclosure. Not just the amount owed, but everything. Even the homeowner's excess equity. Admittedly, New York was not the only state that enacted this scheme. However, the U.S. Constitution prohibits the government from taking property from a citizen in excess of what is owed without just compensation.

This protection *long* predates the federal constitution. "The principle that a government may not take more from a taxpayer than she owes can trace its origins at least as far back as Runnymede in 1215, where King John swore in the Magna Carta that when his sheriff or bailiff came to collect any debts owed him from a dead man, they could remove property 'until the debt which is evident shall be fully paid to us; and the residue shall be left to the executors to fulfil the will of the deceased.' W. McKechnie, Magna Carta, A Commentary on the Great of King John, ch. 26, p.322 (rev. 2d ed. 1914) (footnote omitted)." *Tyler v. Hennepin County,* 598 U.S. 631, 639 (May 25, 2023).

This action is brought by the named Plaintiffs, for themselves and others similarly situated, to redress the constitutional violations practiced by Defendants in collecting from Plaintiffs and the putative class more than they owed the government, in violation of the Takings Clause of the U.S. Constitution, and in violation of other state and federal rights, as set forth below.

**JURISDICTION AND VENUE**

1.    Subject matter jurisdiction over this action lies pursuant to 28 U.SC. §1331 based on the federal claims in this Complaint that arise under the Fifth Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution. Further, this action seeks relief

under 42 U.S.C. §1983, for deprivation of rights guaranteed by the federal constitution accomplished under color of state law, over which original jurisdiction lies in this court pursuant to 42 U.S.C. §1343.

2.      This Court has supplemental jurisdiction over both legal and equitable claims in this Complaint arising under the laws of the state of New York law ("state law claims") pursuant to 28 U.S.C § 1367 because the state law claims "arise out of a common nucleus of operative facts" with the federal claims over which this Court has original jurisdiction.

3.      This action is properly venued in this federal District pursuant to 28 U.S.C. §§1391(b)(1) and (2) because the Defendants are located here; a substantial portion of the conducts giving rise to this action occurred here; and the property that is the subject of this suit is located here.

**PARTIES**

4.      Plaintiff Alexsandr Mkrtchyan (hereinafter referred to "Plaintiff Mkrtchyan" or similar) at all time relevant to this matter, was an owner of property located in Orange County, New York and was the owner of certain real property that is the subject of this action.

5.      Plaintiff Rodney Fergus (hereinafter referred to "Plaintiff Fergus" or similar) at all time relevant to this matter, was an owner of property located in Dutchess County, New York, and was the owner of certain real property that is the subject of this action.

6.      Defendant Orange County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Orange County is one of the Tax Districts described and discussed in this Complaint.

7.      Defendant Kerry Gallagher, is the current Commissioner of Finance of the Orange County Department of Finance, and is sued in her official capacity as the County's enforcement

officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq. (Hereafter, the New York Real Property Tax Law is sometimes referred to as the RPTL).

8.    Defendant Dutchess County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Dutchess County is one of the Tax Districts described and discussed in this Complaint.

9.    Defendant Heidi Seelbach is the current Commissioner of Finance of the County of Dutchess, New York and is sued in her official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq.

## METHOD FOR TAKING PROPERTY WITHOUT JUST COMPENSATION PURSUANT TO NEW YORK LAW

10.    Plaintiff Mkrtchyan was the owner of certain real property located in Orange County, New York, at 5 Point O'Pine Road, Blooming Grove, New York, and known as LOC NO/APN/Parcel 332089 Sec. 27 Block 1, Lot 79. (the "Mkrtchyan Property").

11.    Taxes were owed to the Defendant Tax District, Orange County, on the Mkrtchyan Property in the amount of approximately $30,889, including fees, interest and penalties. See, Exhibit A, attached and incorporated herein.

12.    Plaintiff Fergus was the owner of certain real property located in Dutchess County, New York, Town of Fishkill, and known as LOC NO/APN/Parcel 133089-6155-03-373418-0000 (the "Fergus Property").

13.    Taxes were owed to the Defendant Tax District, Dutchess County, on the Fergus Property in the amount of $5,938.02, including fees, interest and penalties. See, Exhibit B, attached and incorporated herein.

14.    New York law, RPTL 902, places an automatic lien on property each year taxes are levied. This lien attaches regardless of delinquency, automatically.

4

15.    Specifically, RPTL 902 provides:

The amount of all taxes, special ad valorem levies and special assessments levied upon any parcel of real property by the board of supervisors shall, except as otherwise expressly provided by law, be and become a lien thereon as of the first day of January of the fiscal year for which levied and shall remain a lien until paid.

16.    Failure to pay the amounts owed results in a delinquent tax under RPTL 1102[2].

17.    "Delinquent tax" is defined by RPTL 1102[2] as "an unpaid tax, special ad valorem levy, special assessment or other charge imposed upon real property by or on behalf of a municipal corporation or special district, plus all applicable charges, relating to any parcel which is included in the return of unpaid delinquent taxes prepared pursuant to section nine hundred thirty-six [936] of this chapter or such other general, special, or local law as may be applicable."

18.    The aforementioned RPTL 936[2], as referenced in RPTL 1102[2], allows an additional percentage to the delinquency amount:

In making the return of unpaid taxes, the collecting officer shall add five per centum [5%] to the amount of each tax as levied. In the event that the collecting officer fails to do so, the county treasurer shall make such addition. In a county in which there is a local law in effect pursuant to section nine hundred twenty-eight-b [928(b)] or section nine hundred seventy-two [972] of this chapter providing for the collection of taxes in installments, the five per centum [5%] provided by this subdivision shall not be added to the taxes which a real property owner has elected to pay in installments pursuant to section nine hundred twenty-eight-b [928(b)] or section nine hundred seventy-five [975] of this chapter. Such five per centum [5%] shall be added by the county treasurer to the amount of such taxes as shall have remained unpaid after the date upon which the last installment was due as provided in such local law. The amount of such added per centum shall thereafter be deemed part of the amount of the unpaid tax.

19.    Further, the applicable additional "charges" as referenced in the definition of "delinquent tax" are, pursuant to RPTL 1102:

(a) the cost of the mailing or service of notices required or authorized by this article; (b) the cost of publication of notices required or authorized by this title; (c) the amount of any interest and penalties imposed by law; (d) the cost of recording or filing legal documents required or authorized by this article; and (e) the reasonable and necessary cost of any search of the public record required or authorized to satisfy the notice requirements of this article, and the reasonable and necessary expenses for legal services of a tax district in connection with a proceeding to foreclose a tax lien; provided, that: (i) a charge of up to

5

one hundred fifty dollars per parcel shall be deemed reasonable and necessary to cover the combined costs of such searches and legal expenses, and such an amount may be charged without substantiation, even if salaried employees of the tax district performed the search or legal services; and (ii) a tax district may charge a greater amount with respect to one or more parcels upon demonstration to the satisfaction of the court having jurisdiction that such greater amount was reasonable and necessary.

20.    If delinquent taxes (as described above, being the principal and allowed additional charges and percentages) remain unpaid for ten (10) months from the lien date, the enforcing officer is required to file a list of delinquent properties with the County Clerk, per RPTL 1122.

21.    Specifically, RPTL 1122 provides:

Ten months after lien date, or as soon thereafter as is practicable, but no sooner than one month after the receipt of the return of unpaid taxes, the enforcing officer of each tax district shall execute a list of all parcels of real property, except those excluded from such list in the manner provided by section eleven hundred thirty-eight [1138] of this article, affected by delinquent tax liens held and owned by such tax district.

22.    Thereafter, when 11 additional months elapse without proper payment (that is, a total of 21 months after the lien date), the enforcing officer is authorized to bring a foreclosure action on the property pursuant to RPTL 1123.

23.    Specifically, RPTL 1123 provides:

Twenty-one months after lien date, or as soon thereafter as is practicable, the enforcing officer shall execute a petition of foreclosure pertaining to those properties which remain subject to delinquent tax liens; provided, however, that in the case of property which is subject to a three or four year redemption period, such petition shall be executed thirty-three or forty-five months after lien date, respectively, or as soon thereafter as is practicable.

24.    If the owner of the property fails to answer the foreclosure petition or fails to redeem the property by paying all the delinquent taxes and charges and percentage by the expirations of the redemption period (governed by RPTL 1110), a judgment is entered pursuant to RPTL 1123 and 1136, authorizing the divestiture of title of the property from the owner, and authorizing the enforcing officer to file a deed taking full and complete title to the property from

the owner and transferring it to the Tax District, here Defendants Orange County and Dutchess

County, as pertinent.

25.    Specifically, RPTL 1123 and 1136 provide:

Twenty-one months after lien date, or as soon thereafter as is practicable, the enforcing
officer shall execute a petition of foreclosure pertaining to those properties which remain
subject to delinquent tax liens; provided, however, that in the case of property which is
subject to a three or four year redemption period, such petition shall be executed thirty-
three or forty-five months after lien date, respectively, or as soon thereafter as is
practicable. §1123(1).

All persons . . . who may have had any right, title, interest, claim, lien or equity of
redemption in or upon such parcel, shall be barred and forever foreclosed of all such right,
title, interest, claim, lien or equity of redemption. §1136[3].

26.    Upon taking of title of the property from the owner, the Tax District may keep the

property for government use, or is authorized by RPTL 1166 to sell the property.

27.    Specifically, RPTL 1166 provides:

Whenever any tax district shall become vested with the title to real property by virtue of a
foreclosure proceeding brought pursuant to the provisions of this article, such tax district
is hereby authorized to sell and convey the real property so acquired, which shall include
any and all gas, oil or mineral rights associated with such real property, either with or
without advertising for bids, notwithstanding the provisions of any general, special or local
law.

### BACKGROUND FACTS ON DEFENDANTS' TAKING OF PLAINTIFF
### MKRTCHYAN'S PROPERTY WITHOUT JUST COMPENSATION

28.    In 2022, pursuant to and under color of the laws of the State of New York, to wit,

N.Y. Real Prop. Tax § 1102 et seq., Defendant Orange County, New York moved for an Order

and Judgment of Foreclosure in Supreme Court, Orange County with respect to several parcels of

real property, including Plaintiff Mkrtchyan's Property, which the Court granted.

29.    Subsequent to the Court's grant and entry of the above order, and pursuant to N.Y.

Real Prop. Tax § 1102 et seq; §1132; and/or § 1194, inter alia, Defendant Kerry Gallagher,

Commissioner of Finance of the Orange County Department of Finance, and as "Enforcement

Officer", conveyed and transferred title to the Property to the County of Orange, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194.

30.     That act constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

31.     On approximately September 8, 2022, and pursuant to Section 1166, the Property was sold pursuant to and under color of the laws of the State of New York for $66,000. See, Exhibit C, attached hereto and incorporated herein.

32.     The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff Mkrtchyan for delinquent taxes and charges.

33.     Defendant Orange County retained all the proceeds of this sale despite Plaintiff Mkrtchyan only owing approximately $30,889 in past due taxes and charges.

34.     Pursuant to and under color of New York state law, that excess was not returned to Plaintiff Mkrtchyan, and Plaintiff Mkrtchyan was given no opportunity or ability to receive that excess.

35.     The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

**BACKGROUND FACTS ON DEFENDANTS' TAKING OF PLAINTIFF FERGUS'S PROPERTY WITHOUT JUST COMPENSATION**

36.     On or about February 23, 2021, and pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Dutchess County, New York filed for an Order and Judgment of Foreclosure in Supreme Court, Dutchess County (Index No. 2019-54520) with respect to several parcels of real property, including Plaintiff Fergus's

Property, which the Court granted and entered on or about February 23, 2022. See, Exhibit D, attached hereto and incorporated herein.

37.     Subsequent to the Court's grant and entry of the above order, on or about February 24, 2022, and pursuant to N.Y. Real Prop. Tax § 1102 et seq; §1132; and/or § 1194, inter alia, Heidi Seelbach, Commissioner of Finance of the County of Dutchess, and as "Enforcement Officer", conveyed and transferred title to Fergus' property to the County of Dutchess, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. This Deed was recorded in Document #2022-824 in the Dutchess County Clerk's Office. See, Exhibit E, attached hereto and incorporated herein.

38.     That act constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

39.     On approximately December 5, 2022, and pursuant to Section 1166, the Fergus property was sold and conveyed pursuant to and under color of the laws of the State of New York for $37,000. See, Exhibit B, attached hereto and incorporated herein.

40.     The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff Fergus for delinquent taxes and charges.

41.     Defendant Dutchess County retained all the proceeds of this sale despite Plaintiff Fergus only owing approximately $5,839.02 in past due taxes and charges.

42.     Pursuant to and under color of New York state law, that excess was not returned to Plaintiff Fergus, and Plaintiff Fergus was given no opportunity or ability to receive that excess.

43.     The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

**GOVERNMENTAL ACTIONS AND COLOR OF LAW**

44.    The collection in New York of property taxes and certain other obligations is governed by New York state law.

45.    Bodies politic, political subdivisions, and/or tax districts in New York receive their authority to make and levy taxes and other obligations, and to engage in collections of same and the disposition of the property taken in those collections and the proceeds derived therefrom, pursuant to the laws of the State of New York and do so under color of those laws.

46.    New York law allows tax districts to foreclose on and take title to real property based on unpaid taxes or other obligations. N.Y. Real Prop. Tax § 1102 et seq.

47.    This process provides that when real property taxes for an identified property have not been paid, the tax district's lien on the property is foreclosed. That action is recorded as a public record and can be verified by those records.

48.    As a result, the tax district takes title to the subject property from the owner and transfers it to itself.

49.    As stated above, this constitutes a taking of the subject property from the owner by the tax district.

50.    That taking is a violation of the Fifth Amendment to the United States Constitution, and Article I, Section 7 of the New York Constitution, if just compensation is not paid.

51.    However, subsequent to these takings conducted by Defendants, through, inter alia, their Enforcement Officers, and taken under the authority and color of the laws the State of New York, Plaintiffs and the putative class members were not paid just compensation as required by the Fifth Amendment to the U.S. Constitution and the New York Constitution, Article I, Section 7.

52.    The bodies politic, political subdivisions, and tax districts, including the Defendants in this action, used their authority to undertake the herein-stated conduct and perpetrate

unconstitutional takings without just compensation against Plaintiffs and the putative class members

53. As it relates to the named Plaintiffs and members of the putative class, their property taken during the Class Period, defined below, had a value in excess of the amount owed to the government for the taxes and/or other obligations for which the property was taken.

54. New York law, and the actions alleged herein taken under color of that law, afforded the named Plaintiffs and the putative class member no opportunity to obtain that excess, and following sale (or retention of their property for government use) they did not receive that excess.

55. The takings that are challenged by this action occurred in two distinct ways. First, the citizen's property was taken under color of law for nonpayment of taxes or other obligations and sold, with proceeds in excess of the amount owed by the citizen, but, acting again under color of law, that excess was not returned to the citizen.

56. Second, and alternatively, the property was taken under color of law for nonpayment of taxes or other obligations and was not sold but was kept by the government; the property value was in excess of the amount owed by the citizen; and, acting again under color of law, Defendants failed to return this excess to these citizens.

57. The foregoing conduct and practice, accomplished under color of New York state law, of taking and keeping property or its proceeds, in excess of monies owed, is ongoing, and continues as current practice and is current 'law' in New York. This causes a persistent and continuing violation of both the United States and the New York constitutions, providing basis for declaratory and injunctive relief.

## VIOLATIONS OF THE UNITED STATES CONSTITUTION

58.    In *Tyler v. Hennepin County,* the United States Supreme Court, in a 9-0 decision, 1) declared unconstitutional state laws like New York's that authorize and result in the practice of taking and retaining excess proceeds of tax foreclosures and tax sales; and 2) declared a violation of a citizen's constitutional rights where such takings occur. *Tyler v. Hennepin County* (2023), 598 U.S. 631, 143 S.Ct. 1369.

59.    The reasoning of the *Tyler* decision is straightforward. The Constitution's Taking Clause prohibits the 'taking of property without just compensation.' U.S. Const., Amend 5. That prohibition applies to the federal government based on the Fifth Amendment, and state government through the Fourteenth Amendment. *Tyler* at 637-38.

60.    The prohibition is not against states enacting laws to collect taxes and other obligations, which is permitted to satisfy the citizen's taxes. It is against taking more than is owed, as is happening in this case. The government has the

> power to sell [plaintiff's] home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a "classic taking in which the government directly appropriates private property for its own use." *Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Regional Planning Agency*, 535 U. S. 302, 324 (2002) (internal quotation marks and alteration omitted). [Plaintiff] has stated a claim under the Takings Clause and is entitled to just compensation.

*Tyler* at 639.

## NEW YORK STATUTES WHICH CREATED AND RESULTED IN THIS TAKING VIOLATION

61.    The laws of the State of New York create the authority, and thereby the color of law, for retaining proceeds from foreclosed or seized property, in excess of the amount owed by the citizen.

62.     Specifically, New York Real Property Tax Law, Chapter 50-a, Article 11 ("Article 11") provides (in violation of both the New York and U.S. Constitution) that proceeds from the sale of foreclosed property may be kept, in excess of taxes owed.

63.     This violates the Takings Clause.

64.     Further, New York Real Property Tax Law § 1136[3], currently in force, provides for seizure of foreclosed property and thereupon grants title to the government in fee simple, so that "all persons . . . who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption."

65.     This creates the constitutional violation here, because the citizen's property is foreclosed in a way that the citizen loses all right to the property, including any property value in excess of the taxes owed by the individual to the taxing entity. *Hoge v. Chautauqua Cnty.*, 173 A.D.3d 1731, 104 N.Y.S.3d 813 (4th Dept. 2019).

66.     In addition to violating the Takings Clause of the United States Constitution, the conduct herein violates Article I, Section 7 of the New York Constitution, which identically states that, "[p]rivate property shall not be taken for public use without just compensation."

67.     The subject conduct in this action further violates both the United States and the New York constitutional ban against excessive fines. The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed." Article I, Section 5 of the New York Constitution provides: "Excessive bail shall not be required nor excessive fines imposed…"

## CLASS ACTION ALLEGATIONS

68.     This action is brought on behalf of the Plaintiffs and the following class:

All owners of property in the state of New York, Counties of Orange and/or Dutchess: 1) where such property was seized or otherwise subject to foreclosure for unpaid taxes and associated obligations; 2) the property was either a) sold in foreclosure, or b) retained by any governmental entity; 3) the amount received in the sale, or the value of the property taken, was more than the taxes owed, that is, was in excess of the amount of the owner's debt for which the property was taken; and 4) the owner was not given the excess. The class excludes Plaintiff's counsel and officers of the court handling this matter. The class also excludes any owners of property where the property was encumbered by any lien other than the tax lien at the time the property was foreclosed by the County. The class period is the longest period allowed by law before the filing of this action, and thereafter.

69.     Plaintiffs and the class reserve the right under Rule 23, F.R.C.P. to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

70.     This action has been brought and may be properly maintained as a class action under the provisions of Rule 23 of the Civil Rules because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

### A.  **Numerosity**

71.     Members of the proposed class are so numerous that joinder of all members is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiffs are informed and believe that there are hundreds of individuals in the Class.

### B.  **Commonality**

72.     Common questions of law and fact exist as to all members of the proposed class. Such questions include, but are not limited to:

a.      Whether New York law's allowing retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the U.S. Constitution;

b.      Whether the practice against the named Plaintiffs and the putative class members of retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the U.S. Constitution;

c.      Whether the conduct alleged in this suit caused injury in fact to the Plaintiffs and the putative class members;

d.      Whether Defendants, or any of them, should be restrained and thereafter enjoined from continuing to engage in the challenged practice;

e.      Whether New York law allowing retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the New York constitution;

f.      Whether the practice against the named Plaintiffs and the putative class members of retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the New York constitution;

g.      What relief should be granted, if any, to the named Plaintiffs and the putative class members;

h.      Whether Defendants or any of them were unjustly enriched by retaining an excess as a result of taking of the properties;

i.      Whether the conduct alleged herein constitutes a taking of the property of Plaintiffs and the putative class members in violation of the Fifth Amendment of the United States Constitution;

j.      Whether the conduct alleged herein constitutes a taking of property of Plaintiffs and the putative class members in violation Article I, Section 7 of the New York Constitution;

k.      Whether the challenged provisions of New York law enumerated in this Complaint violate the U.S. Constitution, and/or the New York Constitution and should be declared as unconstitutional;

l.      Whether Defendants, or any of them, are liable for inverse condemnation of the property of the named Plaintiff and the putative class members.

## C.  **Typicality**

64.     The claims of the Plaintiffs are typical of the claims of the proposed class. Plaintiffs and all members of the class are similarly harmed by the wrongful conduct alleged here.

## D.  **Adequacy of Representation**

65.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiffs are competent and experienced in class actions and challenges to government taxes and fees litigation.

## E.  **Superiority**

66.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practical, and common questions of law and fact exist to all class members.

67.     Class action treatment will allow all similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## F.  **Rule 23 Further Requirements**

68.     Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for Defendants.

69.     Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

70.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final relief with respect to the class as a whole.

71.     Questions of law or fact common to the class members predominate over any questions affecting only individual members.

**COUNT I**
**Violation of the Takings Clause of the**
**Fifth Amendment of the United States Constitution**

72.     Plaintiffs reallege all averments as if fully rewritten herein.

73.     The conduct of Defendant Counties and/or their Enforcement Officers as alleged herein, resulted in the taking of the property of Plaintiffs and the putative class, under color of state law.

74.     By the conduct as alleged herein, Defendant Counties and/or their Enforcement Officers took the property of Plaintiffs and the putative class without just compensation.

75.     The properties of Plaintiffs and the putative class were taken both physically, and under color of law, depriving Plaintiffs and the putative class their right, title, and interest to same.

76.     Defendant Enforcement Officers took, and Defendant Counties are now in the possession of, the properties of the Plaintiffs and the putative class; or sold same and received the proceeds of such sale.

77.     The value of the properties, or the proceeds from the sale thereof, exceeded the amount owed for the taxes or other charges for which the properties were seized and taken.

78.     Defendant Counties and/or their Enforcement Officers have not given to Plaintiffs or to the putative class those excess monies and/or properties, or their value.

79.    As a direct and proximate result of the foregoing, Plaintiffs and the putative class have not received just compensation for the property seized and taken from them.

80.    Defendants have not provided Plaintiffs or the class members adequate procedure to seek just compensation for the taking of their surplus proceeds.

81.    Plaintiffs and the putative class members have been harmed and damaged by the foregoing, including but not limited to their loss of their surplus equity, for which they demand and are entitled to just compensation and/or relief under law and equity.

**COUNT II**
**Takings in violation of Article I, § 7, of the New York State Constitution**

82.    Plaintiffs reallege all averments as if fully rewritten herein.

83.    Defendants Counties and their Enforcement Officers, acting as political subdivisions, bodies politic, and/or Tax Districts in the State of New York, or acting as an authorized agent and officer thereof, seized and took the property of Plaintiffs and the putative class.

84.    Said seizure and taking was for unpaid taxes and/or other obligations.

85.    The foregoing actions were conducted pursuant to the authority of New York Real Property Tax Law, and/or similar local provision(s).

86.    The seizure and taking of the property of the Plaintiffs and the putative class members was for a specific amount alleged to be owed by the property owners.

87.    Either the value of the property (if not sold at foreclosure after the taking), or the proceeds of the sale of the property (as to property sold following the taking), was in excess of the specified total amount (principal, costs and percentage) alleged to be owed by the property owner.

88.    Defendant Counties and their Enforcement Officers did not return to the property owners, neither the Plaintiffs nor the putative class members, that excess, in violation of Article I,

Section 7 of the New York Constitution which requires just compensation for the taking of private property.

89.     As a direct and proximate result of the foregoing, Plaintiffs and the putative class suffered injury, harm and damage, including at minimum the loss of their surplus equity, for which they demand, and are entitled to, just compensation and/or relief in law and equity.

**COUNT III**
**Imposition of excessive fines in violation of the**
**Eighth Amendment to the United States constitution**

90.     Plaintiffs reallege all averments as if fully rewritten herein.

91.     The seizure and taking of the property of the Plaintiffs and the putative class was in response to the failure of Plaintiffs and the putative class members to pay taxes or other obligation owed to the government.

92.     New York law, including the provisions cited above, were enacted, at least in part, to deter the non-payment of taxes owed the government.

93.     Defendant Counties and/or their Enforcement Officers took their actions alleged herein in furtherance of that purpose.

94.     The amounts collected from Plaintiffs and the putative class members, through the taking and keeping of the excess, had no correlation to the amount owed to the government.

95.     The seizure and taking alleged herein was conducted under color of state law, as averred above.

96.     The seizure and taking of the excess equity as alleged herein was a violation of the Eight Amendment to the United States Constitution's prohibition against excessive fines.

97.     As a direct and proximate result, Plaintiffs and the putative class suffered injury, harm and damage, including at minimum the loss of the excess equity, for which they demand, and are entitled to, relief in law and equity.

**COUNT IV**
**Imposition of excessive fines in violation of Article I §5 of the New York constitution**

98.    Plaintiffs reallege all averments as if fully rewritten herein.

99.    The provisions of Article I, Section 5 of the New York State Constitution prohibit the imposition of excessive fines in the same manner and using the same analysis as the Eighth Amendment to the United States Constitution. See, *Grinberg v. Safir*, 181 Misc. 2d 444, 694 N.Y.S.2d 316, 326-27 (Ny. Sup. Ct. 1999).

100.    The conduct of Defendant Counties and/or their Enforcement Officers were taken, as averred in paragraphs 91-95, above, for the same reasons and in the same manner as averred.

101.    This imposition and taking of all of the property of the Plaintiffs and the putative class, and not limited to the amount actually owed, was an excessive fine in violation of Article I, Section 5 of the New York Constitution.

102.    As a direct and proximate result, Plaintiffs and the putative class suffered injury, harm and damage, including at minimum the loss of the excess equity, for which they demand, and are entitled to, relief in law and equity.

**COUNT V**
**Declaratory Judgment that N.Y. Real Property Tax Law as Described Herein, inter alia, Violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution**

103.    Plaintiffs reallege all averments as if fully rewritten herein.

104.    In material part, the Declaratory Judgments Act, 28 U.S.C. § 2201 (a), provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

105.    The parties currently have a disagreement and controversy, *inter alia*, whether: the conduct alleged herein is a taking for purposes of the United State Constitution, Fifth Amendment, and/or Article I, Section 7 of the New York Constitution; whether that taking was without just compensation; and, if so, whether Plaintiff and the putative class members have rights to relief.

106.    Plaintiffs therefore requests this Court, pursuant to 28 U.S.C. § 2201 et seq., to declare and find that on its face, and/or as applied, N.Y. Real Prop. Tax Law as described herein, inter alia, violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

107.    Further, Plaintiffs requests this Court, pursuant to 28 U.S.C. § 2201 et seq., to declare and find that on its face, and/or as applied, N.Y. Real Prop. Tax Law as described herein, inter alia, violates Article I, Section 7 of the New York Constitution and/or Article I, Section 5 of the New York Constitution.

### COUNT VI
### Unjust Enrichment

108.    Plaintiffs reallege all averments as if fully rewritten herein.

109.    Defendant Counties and/or their Enforcement Officers have been enriched at Plaintiffs' and the putative class members' expense.

110.    Defendant Counties and/or their Enforcement Officers have received money or value to which they are not entitled.

111.    Defendant Counties and/or their Enforcement Officers were enriched when they either retained Plaintiffs' Property and the properties of the putative class members, or sold said properties and collected and retained the surplus proceeds of that sale.

112.    Defendant Counties and/or their Enforcement Officers are not entitled to the surplus proceeds or property because Plaintiffs and the putative class members are "entitled to the surplus

in excess of the debt owed" to Defendant Counties and/or their Enforcement Officers. *Tyler*, 598 U.S. at 642.

113.    By taking the value of Plaintiff's and each putative class members' excess, Defendant Counties and/or their Enforcement Officers took more than was required to satisfy a tax debt, forcing Plaintiffs and the putative class members to make a greater contribution to Defendant Counties and/or their Enforcement Officers than they owed.

114.    It is against equity and good conscience to permit Defendant Counties and/or their Enforcement Officers to retain these excess proceeds.

115.    For the foregoing reasons, Plaintiffs and the putative class members are owed restitution in the amount of the excess proceeds collected by the Defendant Counties and/or their Enforcement Officers.

## COUNT VII
## Money Had and Received

116.    Plaintiffs reallege all averments as if fully rewritten herein.

117.    Defendant Counties and/or their Enforcement Officers received money belonging to Plaintiffs and each putative class member.

118.    Defendant Counties and/or their Enforcement Officers benefitted from receipt of said money.

119.    Under principles of equity and good conscience, Defendant Counties and/or their Enforcement Officers should not be permitted to keep the excess.

120.    Defendant Counties and/or their Enforcement Officers received money belonging to Plaintiffs and the putative class members when they collected the surplus proceeds to which Plaintiffs and the putative class members were entitled. *See Tyler*, 598 U.S. at 642.

121.    By taking the value of Plaintiff's and each putative class members' excess, Defendant Counties and/or their Enforcement Officers took more than was required to satisfy a tax debt, forcing Plaintiffs and the putative class members to make a greater contribution to Defendant Counties and/or their Enforcement Officers than they owed.

122.    Permitting Defendant Counties and/or their Enforcement Officers to retain the excess proceeds and/or the properties themselves, in excess of the amount owed, would violate the principles of equity and good conscience.

123.    For the foregoing reasons, Defendant Counties and/or their Enforcement Officers owe Plaintiffs and the putative class members restitution in the amount of the excess proceeds they collected and/or retained.

**COUNT VIII**
**Inverse Condemnation**

124.    Plaintiffs reallege all averments as if fully rewritten herein.

125.    Defendant Counties and/or their Enforcement Officers have intruded onto Plaintiffs' and each putative class member's property rights to such a degree that the conduct, as alleged herein, amounts to a compensable constitutional taking.

126.    Plaintiffs and the putative class members have suffered damages in an amount to be proven at trial for the failure of Defendant Counties and/or their Enforcement Officers to provide just compensation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment for himself and the putative class, as follows:

a)  A determination that this action may proceed as a class action pursuant to Federal Rules of Civil Procedure 23(b) with Plaintiffs as class representative(s), and the undersigned as Class Counsel;

b)  For judgment for Plaintiffs and the putative class, including but not limited to the amount of the excess (as referenced in this Complaint), interest thereon, costs, and attorney fees;

c)  For a declaration the New York Real Property Tax Law as described herein is unconstitutional, on its face and/or as applied;

d)  For a declaration that the practice challenged herein, of taking real property in excess of the amount of the taxes or other obligations for which the property was seized, and retaining such excess, is unconstitutional;

e)  For disgorgement, restitution, and/or equitable relief as Plaintiffs and the putative class are entitled;

f)  For all other or further compensatory and any other damages as Plaintiffs and the putative class are entitled;

g)  For a preliminary and thereafter permanent injunction against  Defendant Counties and their Enforcement Officers, their agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, who receive notice of the Order, from future use or enforcement the New York Real Property Tax Law as described herein, or of any practice that takes, by seizure, foreclosure, process, mesne process or otherwise, private property for payment of taxes or other obligation, in an amount in excess of the amount for which the seizure was conducted, without returning that excess to the owner from whom the property was taken;

h) For just compensation for inverse condemnation of the private property of Plaintiffs and the putative class;

i) For prejudgment and post-judgment interest, as permitted by law;

j) For a recovery of all costs, reasonable litigation expenses, and reasonable attorneys' fees, as permitted by law, including but not limited to as provided by 42 U.S.C. § 1988 and New York law; and/or

k) For such other and further legal, declaratory, injunctive and equitable relief as the Court may deem just and proper.

**Demand for Jury Trial**

Plaintiffs and the putative class members demand trial by jury in the maximum number allowed by law.

Respectfully submitted,

s/*Patrick J. Perotti*
Patrick J. Perotti, Esq. (Admitted Pro Hac Vice)
Nicole T. Fiorelli, Esq. (Admitted Pro Hac Vice)
Frank A. Bartela, Esq. (Admitted Pro Hac Vice)
Patrick J. Brickman, Esq. (Admitted Pro Hac Vice)
Shmuel S. Kleinman, Esq. (Admitted Pro Hac Vice)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 // (440) 352-3469 Fax
Email: pperotti@dworkenlaw.com
nfiorelli@dworkenlaw.com
fbartela@dworkenlaw.com
pbrickman@dworkenlaw.com
skleinman@dworkenlaw.com

Ronald P. Friedberg, Esq. (Admitted Pro Hac Vice)
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Blvd., Suite 500
Cleveland, OH 44122

(216) 831-0042 // (216) 831-0542 Fax
Email: rfriedberg@meyersroman.com

Stacey E. Trien, Esq.
Steven E. Cole, Esq.
Robert P. Yawman, Esq.
Adams Leclair LLP
28 East Main Street, Suite 1500
Rochester, New York 14614
(585) 327-4200 // (585) 327-4200 Fax
Email: strien@adamsleclair.law
        scole@adamsleclair.law
        ryawman@adamsleclair.law

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, the foregoing *Second Amended Complaint* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/*Patrick J. Perotti*
Patrick J. Perotti, Esq. (Admitted Pro Hac Vice)
Dworken & Bernstein Col., L.P.A.

*One of Attorneys for Plaintiffs*